Filed 5/31/23  P. v. Knight CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CLARENCE VINSON KNIGHT,<br><br>    Defendant and Appellant. | D080390<br><br><br><br>(Super. Ct. No. CR46053) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley, Alan L. Amann, and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

In 1979, a jury convicted Clarence Vinson Knight of first degree murder (Pen. Code,[1] § 187). The jury also found Knight personally used a firearm in the commission of the offense. Knight was sentenced to an indeterminate term of 25 years to life, consecutive to various other convictions.

Knight appealed his conviction, and this court affirmed in a published opinion filed October 17, 1980. (*People v. Knight* (1980) 111 Cal.App.3d 201 (*Knight*).)

In 2019, Knight filed a pro. per. petition for resentencing under section 1172.6 (formerly section 1170.95).[2] The court appointed counsel and obtained briefing from the parties. After considering the briefing, the record of conviction, and the prior opinion of this court, the trial court determined Knight was the actual killer and, thus, had not demonstrated prima facie showing of eligibility under section 1172.6. The superior court denied the petition by written order.

Knight filed a timely notice of appeal, and his appointed appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 indicating counsel had not been able to identify any arguable issues for reversal on appeal. Counsel asked us to review the record for error as mandated by *Wende*. We offered Knight the opportunity to file his own brief on appeal, and he filed a supplemental brief.

In an unpublished opinion, we affirmed the superior court's order, noting that we did not discover any arguable issues for appeal. (See *People v. Knight* (Apr. 2, 2021, D077877 [nonpub. opn.]).)

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] Assembly Bill No. 200 (Stats. 2022, ch. 58, § 10) renumbered section 1170.95 to 1172.6, effective June 30, 2022.

On January 14, 2022, Knight filed another section 1172.6 petition for resentencing. In a written order, the superior court denied the petition finding Knight was "collaterally estopped from raising the issues presented in this successive petition." The court reasoned that "[w]hile there have been subsequent changes to Section [1172.6] through legislative amendments and varying statutory interpretations within the relevant case law, there has been no change in the applicable law or facts to [Knight's] case that would justify the filing of a successive petition, nor has [Knight] asserted such a justification."

Knight appeals the order, contending section 1172.6 does not bar successive petitions, and he is entitled to the benefit of "a substantial change in the law related to the facts that could be considered in adjudicating the petition." We agree that section 1172.6 does not explicitly bar successive petitions. That said, Knight was not prejudiced by the court's denial of the petition because he, as he was when he filed his first resentencing petition, remains the actual killer and thus is ineligible for relief under section 1172.6.

FACTUAL BACKGROUND[3]

"In the late afternoon of January 15, 1979, Knight and his younger half-brother Parrish Chambers met Charles Turner and a man named 'Feissy.' Chambers drove them in a stolen silver Mustang to a gas station, which Knight and Turner robbed. Chambers then drove them to a nearby supermarket, where Knight and Turner snatched purses from two customers. The customers saw the type of car they used. Going home, Chambers blocked

---

[3] We take the factual background from our previous opinion in Knight's direct appeal. (See *Knight*, *supra*, 111 Cal.App.3d at pp. 203-204.) This factual summary is recited for the limited purpose of providing context to Knight's criminal conviction. We otherwise do not rely on this factual background for purposes of our analysis here.

3

a car stopped at an intersection, and Knight and Turner robbed its occupants, [L.C.], his wife [C.C.], and their nine-year-old son. During the robbery, Knight shot and killed [C.C.]

"On January 23, Knight turned himself in to the San Diego police. The detectives assigned to his case told him of his *Miranda* rights, and he agreed to talk to them. However, after the detectives played tape recordings of statements which Chambers and Turner had given them, Knight said he would remain silent. The detectives then left him alone. They returned a few minutes later to say they knew he had confessed to his mother and she would testify against him at his trial. In response to Knight's question, they told him he would go to prison if convicted. He then voluntarily confessed.

"About two hours after completing his confession, Knight arrived at the search and receiving area of the jail where Deputy Kim Quaco, whom he knew well from an earlier stay in the jail, was on duty. Quaco knew nothing about Knight's case. Knight told Quaco he wanted to talk to him, but the deputy told him to wait until after he had been searched. About 20 minutes later, Knight again asked Quaco to hear him, but Quaco again put him off, telling him to wait until after Quaco's dinner break. When the deputy returned 20 to 25 minutes later, Knight renewed his request once again and Quaco said he would listen. Knight told the deputy he had decided not to talk to anyone until he saw Quaco; he expressed concern about his 'little brother' Chambers, whom he wanted to protect. Knight again confessed his role in the murder, and to stealing the Mustang. During their conversation, Quaco did not question Knight, nor did he attempt to elicit the confession. He merely told Knight he would listen to whatever Knight had to say."

## DISCUSSION

### A. Applicable Law

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was enacted to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.) Senate Bill 1437 did this by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, §§ 2 & 3.) Amended section 188 states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Amended section 189 states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

Senate Bill 1437 also established resentencing relief for eligible defendants. (§ 1172.6, subd. (a); *People v. Strong* (2022) 13 Cal.5th 698, 707-708.) Under subdivision (a), "[a] person convicted of felony murder or murder

5

under a natural and probable consequences theory may file a petition" with the sentencing court to have his or her murder conviction vacated and to be resentenced on any remaining counts "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019" under Senate Bill 1437. After receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.'" (*Strong*, at p. 708, citing § 1172.6, subd. (c).) If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(3).)

On October 5, 2021, the Governor signed Senate Bill No. 775 (Senate Bill 775) into law, and its amendments to section 1172.6 became effective on January 1, 2022. Senate Bill 775 amended section 1172.6, subdivision (d)(3) to provide the following, in relevant part: "The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1176.2, subd. (d)(3).)

Before the enactment of Senate Bill 775, the trial court could consider the factual summary in an appellate opinion at a hearing under section 1172.6, subdivision (d)(3), because the factual summary was admissible as reliable hearsay. (See, e.g., *People v. Williams* (2020) 57

6

Cal.App.5th 652, 660-663; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 800 [the record of conviction may include the underlying facts as summarized in an appellate opinion].)

Following the enactment of Senate Bill 775, however, the "Legislature limited use of prior appellate opinions [in hearings under section 1172.6, subdivision (d)], allowing trial judges to 'consider the procedural history of the case recited.' " (*People v. Clements* (2022) 75 Cal.App.5th 276, 292.) Through the passage of Senate Bill 775, "the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing." (*Ibid.*; accord, *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9 ["Senate Bill 775 prevents a trial court from relying on facts recited in an appellate opinion to rule on a petition under section [1172.6]"].) However, some California courts have concluded that a trial court cannot use the factual summary in an appellate opinion at any stage of a section 1172.6 petition. "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988 (*Flores*).)

## B. Analysis

Below, the superior court denied Knight's second sentencing petition, finding that he could not file a successive petition under section 1172.6. Knight contends, and the People concede, that section 1172.6 does not contain an explicit bar of successive petitions. Here, Knight claims that he is bringing his most recent petition based on a change of the law. To the extent he is doing so, we see no bar under section 1172.6 to such a petition. (See

7

*People v. Farfan* (2021) 71 Cal.App.5th 942, 951 (*Farfan*) [" 'Because of the change in the applicable law . . . the petition is not subject to the procedural bar of successiveness' "].)  Therefore, we conclude the superior court erred in denying the petition on the grounds that section 1172.6 does not permit successive petitions.  However, we still must determine whether Knight has made a prima facia case for relief based on a change in the law.

Here, as we discussed *ante*, the change in the law deals with the use of a previous appellate court opinion in considering the petition at an evidentiary hearing.  The specific provision on which Knight relies states the following:  "The court may also consider the procedural history of the case recited in any prior appellate opinion."  (§ 1172.6, subd. (d)(3).)  Knight argues that this portion of subdivision (d)(3) does not permit a trial court to use an appellate opinion for any purpose, even in evaluating a petition to determine whether the petitioner has stated a prima facia case, other than considering the procedural history set forth in that opinion.  In other words, Knight maintains that a trial court may not simply adopt the statement of facts of any appellate opinion to deny a petition for resentencing under section 1172.6.

The People counter that subdivision (d)(3) of section 1172.6 is not applicable here because that subdivision addresses what a court can consider during an evidentiary hearing, not when evaluating a petition to ascertain whether the petitioner made a prima facie case.  Although we agree that subdivision (d)(3) governs evidentiary hearings under section 1172.6, it is illogical that the statute would prohibit a trial court from basing its factual findings on the statement of facts from an appellate opinion during an evidentiary hearing but allow the trial court to use those same facts to deny a

petition at the initial stage. We thus follow *Flores*, *supra*, 76 Cal.App.5th at page 988.

Nonetheless, simply because we follow *Flores* does not mean our inquiry is finished. Although section 1172.6 does not prohibit successive petitions and the superior court may not adopt an appellate court's statement of facts to deny a petition, we still must ascertain whether Knight was prejudiced by the trial court's error. Put differently, did Knight make a sufficient prima facie showing that he was entitled to relief under section 1172.6?[4]

In determining whether a prima facie showing has been made, the trial court may rely upon the record of conviction. (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) However, "[w]hile the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Ibid.*) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion,' " (*Id.* at p. 972; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his

---

[4] We summarily reject the People's argument that Knight's second petition was barred by res judicata, collateral estoppel, or law of the case. Here, Knight is arguing that a change of law impacts his latest petition for relief under section 1172.6, and thus, he is asserting a claim that did not exist during his previous petition. In other words, the argument presented here is not identical to an issue previously litigated. (See *People v. Barragan* (2004) 32 Cal.4th 236, 253.)

or her factual allegations were proved.  If so, the court must issue an order to show cause." ' " (*Lewis*, at p. 971; *Drayton*, at p. 978.)

Although a court should not reject a petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing (*Lewis*, *supra*, 11 Cal.5th at p. 971), the court need not credit factual assertions that are untrue as a matter of law (*Drayton*, *supra*, 47 Cal.App.5th at p. 980). Thus, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971.)

"[T]his authority to make determinations without conducting an evidentiary hearing pursuant to section [1172.6], subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)  Facts preclusive of relief at the prima facie stage may include, for example, the absence of jury instructions on the felony murder theory or natural and probable consequences doctrine. (*People v. Rivera* (2021) 62 Cal.App.5th 217, 236; see, e.g., *People v. Daniel* (2020) 57 Cal.App.5th 666, 670-671 [jury was not instructed on either felony murder or murder under the natural and probable consequences doctrine].)

Conversely, the presence of certain jury instructions, in addition to the jury's verdict and findings upon specific enhancements may also conclusively establish the petitioner was convicted as the actual killer, without factfinding or weighing evidence.  In *People v. Harden* (2022) 81 Cal.App.5th 45 (*Harden*), for example, this court concluded that the jury instructions and

10

verdicts conclusively established the jury found that the defendant was the actual killer. (*Id.* at p. 56.) There, the prosecutor theorized the defendant had acted alone in committing a murder during the course of a robbery and therefore declined to instruct the jury on aiding and abetting, accomplice liability, or liability based upon the defendant's participation in the underlying felony as a major participant that acted with reckless indifference to human life. (*Id.* at p. 53.)

The jury was instructed on deliberate and premeditated murder (CALJIC No. 8.20) and felony murder (CALJIC No. 8.21). The court also instructed the jury on first degree murder with special circumstances under a modified version of CALJIC No. 8.80.1, which permitted a true finding on the special circumstance only if the defendant was the actual killer. (*Harden*, *supra*, 81 Cal.App.5th at pp. 48, 56.) The jury was also asked to find whether the defendant had "personally inflicted great bodily injury" upon the victim in committing the offenses (CALJIC No. 17.20). (*Harden*, at p. 54.)

The jury found the defendant guilty of murder and robbery. It also found true the special circumstance allegation and the enhancement for the personal infliction of great bodily injury. On appeal, the court held that the instructions, jury's verdict, and true finding on the special circumstance and great bodily injury enhancement showed "the jury necessarily found [the defendant] actually killed [the victim]." (*Harden*, *supra*, 81 Cal.App.5th at p. 60.) Thus, we determined that the trial court had correctly denied the petition for resentencing at the prima facie stage. (*Ibid.*)

With this background in mind, we turn to the record of conviction here to determine whether it contains facts that conclusively refute Knight's sworn assertion that he "could not . . . be convicted of murder . . . because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

11

The information alleged that Knight, Turner, and Chambers robbed L.C. (§ 211), robbed C.C. (§ 211), and murdered C.C. (§ 187). However, the information also alleged that during the commission of each of these offenses, both Turner and Chambers were armed with a firearm (§ 12022, subd. (a)), but only Knight personally used a firearm during the robberies and the murder (§ 12022.5). Therefore, the information reveals that the only defendant charged as the actual killer of the victim was Knight.

Knight was tried separately from Turner, and Knight was tried first. The trial court ruled that Knight's first statement to police was inadmissible, but his second statement to Deputy Quaco, admitting that he shot the victim, was admissible.

Consistent with the manner in which Knight was charged, the jury instructions and verdict forms confirm that he was convicted of felony murder as the actual killer. To define "murder" as alleged in count 10 of the information, the court instructed the jury with CALJIC No. 8.10, which provided: "The crime of murder is the unlawful killing of a human being with malice aforethought. [¶] In order to prove the commission of the crime of murder each of the following elements must be proved: [¶] 1. A human being was killed, [¶] 2. That the killing was unlawful, and [¶] 3. That the killing was one [w]ith malice aforethought."

The jury was also instructed that it could convict defendant of first degree murder as the direct perpetrator (CALJIC No. 8.21)[5] or as an aider

---

[5] CALJIC No. 8.21 provided: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of robbery and where there was in the mind of the perpetrator the specific intent to commit such crime, [the crime] is murder of the first degree."

12

and abettor (CALJIC No. 8.27).[6] The court also instructed the jury that second degree murder is the unlawful killing of a human being resulting from an unlawful act dangerous to life. Further, the court instructed the jury on its duty to unanimously determine the degree of murder. Given these instructions, Knight would be eligible for relief only if the jury convicted him of felony murder as an aider and abettor and not as the actual killer. (See *Harden*, *supra*, 81 Cal.App.5th at p. 53 ["defendants convicted of felony murder are not eligible for relief if they were the actual killer"].)

The jury was instructed with CALJIC No. 17.19 as follows:

> "It is alleged [in Count[s] 8, 9, and 10] that the defendant Clarence Knight personally used a firearm during the commission of the crime[s] charged. [¶] The word 'firearm' includes [a Pistol]. [¶] The term 'used a firearm,' as used in this instruction, means to display a firearm in a menacing manner, intentionally to fire it, or intentionally to strike or hit a human being with it. [¶] If you find the defendant Clarence Knight guilty of one or more of the crime[s] charged or an attempt to commit the crime[s] charged or a lesser and included felony offense, it then will be your duty to find whether the defendant Clarence Knight personally used a firearm in the commission of such felony[s]. [¶] The defendant Clarence Knight may be found to have personally used a firearm during the commission of such felony[s] only if the proof shows beyond a reasonable doubt that such defendant personally used a firearm at such time."

---

[6] CALJIC No. 8.27 provided: "If a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of robbery, all persons, who either directly and actively commit the act constituting such crime or who with knowledge of the unlawful purpose of the perpetrator of the crime aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental."

13

The jury found Knight guilty of robbery regarding both L.C. and C.C. and found true that he personally used a firearm as charged pertaining to those robbery counts. The jury also found Knight guilty of first degree murder regarding C.C. and found true that he personally used a firearm as charged pertaining to that murder count.

Here, there were no other allegations that any of the other defendants personally used a firearm. Moreover, Knight does not dispute that the victim here died of a gunshot wound. Nor does he represent that he was not the shooter. Rather, he simply argues that the jury was never asked to determine that he was the shooter. Yet, on the record of conviction, it is apparent the jury did make such a conclusion. By finding Knight personally used a gun in the commission of the murder, the jury necessarily found that Knight was the actual shooter and killer of the victim. (Cf. *People v. Jones* (2003) 30 Cal.4th 1084, 1119-1120 [jury necessarily found that defendant was the actual killer by expressly finding that he personally used the only firearm brandished during the robbery].)

In addition, although we make no factual findings here, we observe that Knight confessed to shooting the victim. Nevertheless, in his second petition as he did in his previous petition, he argues that he gave a false confession to protect his younger brother. Yet, he was able to make that argument to the jury during his trial. Further, he challenged the admissibility of his confession at trial and on appeal. A petition for resentencing under section 1172.6 is not a mechanism by which a defendant has yet another opportunity to attack evidence admitted at his trial and to urge the fact finder to reach a different conclusion. (See *Farfan, supra*, 71 Cal.App.5th at p. 947 ["The mere filing of a section [1172.6 ] petition does not

14

afford the petitioner a new opportunity to raise claims of trial error or attack . . . the jury's findings"].)

Because Knight was the actual killer, he is ineligible for relief under section 1172.6.  (See *Harden*, *supra*, 81 Cal.App.5th at p. 47.)

DISPOSITION

The order is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.